UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICORP FINANCIAL, L.L.C,,

      Plaintiff,

v.

LANSING PHARMACY, L.C.,
ROBERT WINTERS, WINTERS
PHARMACIES, INC., and
WINTERS COMPANIES,

      Defendants.
_____/

Case No. 11-14795
Hon. Gerald E. Rosen

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     February 8, 2013

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Americorp Financial, L.L.C. commenced this action in state court in September of 2011, seeking to recover under a pair of financing agreements through which (i) Plaintiff agreed to provide financing for the purchase by Defendant Lansing Pharmacy, L.C. of two pharmaceutical dispensing systems, and (ii) this Defendant, in turn, allegedly obligated itself to repay this financing through a series of sixty consecutive monthly installment payments. Plaintiff also seeks to recover under guaranties executed

by Defendants Robert Winters, Winters Pharmacies, Inc., and Winters Companies, through which these three Defendants allegedly guaranteed the repayment obligations owed by Defendant Lansing Pharmacy under the financing agreements. Defendants removed the case to this Court on October 31, 2011, citing the diverse citizenship of the parties and an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a).

Through the present motion filed on April 30, 2012, Plaintiff now seeks summary judgment in its favor as to the repayment obligations owed by Defendants under the financing agreements and guaranties, arguing that Defendants have failed to identify a factual basis for any of the affirmative defenses to liability they have asserted in their answer to Plaintiff's complaint. On May 24, 2012, Defendants filed a response in opposition to Plaintiff's motion, contending that Plaintiff failed to act in good faith by allegedly impeding Defendant Lansing Pharmacy's efforts to sell or sublet the pharmaceutical dispensing equipment to other companies, and that these allegedly obstructive actions by Plaintiff constituted a breach of Plaintiff's obligation to mitigate its damages. Plaintiff then filed a reply in further support of its motion on June 7, 2012, primarily challenging the viability of the affidavit and other materials produced by Defendants in their effort to identify genuine issues of fact that would preclude summary judgment in Plaintiff's favor.

Having reviewed the parties' briefs in support of and opposition to Plaintiff's motion, as well as the accompanying exhibits and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in

these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiff's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL BACKGROUND

On July 31, 2008, Defendant Lansing Pharmacy, L.C. entered into two equipment finance agreements with Plaintiff Americorp Financial, L.L.C., in order to secure financing for the lease of two pharmaceutical dispensing systems from a third party, Parata Systems, L.L.C.  (*See* Plaintiff's Motion, Exs. 1, 6, 7/31/2008 Equipment Finance Agreements.)[1]  Under these agreements, Lansing Pharmacy agreed to repay Plaintiff for the financing through a series of sixty consecutive monthly installment payments. Lansing Pharmacy's chairman and chief executive officer, Defendant Robert Winters, executed guaranties in which he unconditionally agreed to make all payments and meet all other obligations called for under the finance agreements, (*see* Equipment Finance Agreements at 1), and two other companies associated with Mr. Winters, Defendants Winters Pharmacies, Inc. and Winters Companies, also executed guaranties of Lansing

---

[1]Plaintiff was identified in these two finance agreements as "Parata Financial Co."  As stated in the agreements, however, Plaintiff was "not affiliated with or related to the supplier" of the equipment, Parata Systems, but instead used the name Parata Financial "pursuant to a license agreement" with Parata Systems.  (*See* Equipment Finance Agreements at 2.)  An official of the Plaintiff corporation, Thomas J. Amell, has confirmed in an affidavit that Plaintiff and Parata Systems are "distinct and separate entities," that these two entities have "no overlapping ownership or management," and that Plaintiff "uses the name Parata Financial Co. under a licensing agreement disclosed in the Financing Agreements only when financing products supplied by Parata Systems."  (Plaintiff's Reply Br., Amell 6/7/2012 Decl. at ¶¶ 6-7.)

3

Pharmacy's obligations under the finance agreements, (*see* Plaintiff's Motion, Exs. 4, 5, 9, Corporate Guaranties).

The two finance agreements both included a number of provisions that bear upon the parties' claims and defenses in the present suit.[2] First, they defined a "[d]efault" as, among other things, a failure to make any payment when due. (*See* Equipment Finance Agreements at 2.) Upon a default, Plaintiff was authorized to "retake immediate possession of the Equipment without any court order or other process of law" and "sell or re-rent the Equipment at any public or private sale," and to "accelerate without notice all sums payable under the Agreement . . . and require [Lansing Pharmacy] to immediately pay [Plaintiff] all sums that are already due and the discounted value . . . of all payments that will be due under this Agreement, less the net proceeds of disposition, if any, of the Equipment." (*Id.*) Lansing Pharmacy was advised that it had "no right to sell, transfer, assign or sublease the equipment or this Agreement," that it was required to "make all payments under this Agreement regardless of any claim or complaint" against the equipment supplier, and that Plaintiff took no "responsibility for the installation or performance of the Equipment" and made "no warranty, express or implied, . . . that the Equipment is fit for a particular purpose or that the Equipment is merchantable." (*Id.*) Finally, the finance agreements were to be "governed by and construed in accordance with the laws of Michigan," and they stated that the agreements and their accompanying

---

[2]The pertinent terms of the two agreements are identical.

guaranties constituted "the entire agreement and understanding between" the parties and guarantors, that "neither party relies upon any other statement or representation," and that the agreements could not be modified "unless in writing, signed by [Plaintiff]." (*Id.*)

On June 23, 2010, the two finance agreements were amended to modify and extend their payment terms, purportedly as an accommodation to Lansing Pharmacy. (*See* Plaintiff's Motion, Exs. 3, 8, 6/23/2010 Amendments; *see also* Plaintiff's Motion, Amell 4/30/2012 Aff. at ¶¶ 5, 8.) Since May of 2011, however, Lansing Pharmacy has failed to make the monthly installment payments called for under the finance agreements.

As discussed in greater detail below, in the latter part of 2010 and in 2011, Lansing Pharmacy asserts that it made various efforts to either sell or sublet the equipment covered by the finance agreements. None of these efforts was successful, however. Instead, Plaintiff brought the present suit in September of 2011, asserting a breach of contract claim against Lansing Pharmacy, seeking to collect on the guaranties executed by the remaining Defendants, and requesting that it be awarded possession of the equipment covered by the finance agreements.[3]

## III. ANALYSIS

---

[3] In a stipulated order entered on March 30, 2012, the Court awarded possession of the equipment to Plaintiff, and authorized Plaintiff to sell or otherwise dispose of the equipment in accordance with the terms of the finance agreements, with the proceeds of these sales or other dispositions to be applied against the amounts claimed by Plaintiff to be owed under the finance agreements. Plaintiff has since advised the Court that the two pharmaceutical dispensing systems have been sold.

### A. The Standards Governing Plaintiff's Motion

Through the present motion, Plaintiff seeks an award of summary judgment in its favor on each of the claims asserted in its complaint. Under the pertinent Federal Rule, summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where the moving party — here, Plaintiff — seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."

Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     Defendants Have Failed to Produce Evidentiary Support for Their Defenses To Liability Under the Finance Agreements and Guaranties.**

As revealed in the parties' briefs in support of and in opposition to Plaintiff's motion, the issues presented for the Court's resolution are few in number and narrow in scope. Most significantly, Defendants seemingly acknowledge that Lansing Pharmacy defaulted on its payment obligations under the two equipment finance agreements, and they argue only that Plaintiff's remedies are limited as a result of (i) its purported lack of good faith conduct and (ii) its alleged failure to mitigate its damages in the wake of Lansing Pharmacy's default. As discussed below, however, the Court finds that the arguments advanced by Defendants in opposition to Plaintiff's motion lack both legal and factual support.

In support of their claims of bad faith and failure to mitigate damages, Defendants assert that Plaintiff misleadingly led Defendant Lansing Pharmacy to believe that it would be permitted to sell or sublet the pharmaceutical dispensing equipment covered by the finance agreements, provided that it secured Plaintiff's prior authorization, and provided

that Plaintiff could be assured of the creditworthiness of the businesses that were to assume the equipment leases. (*See* Defendants' Response, Ex. 2, Winters Decl. at ¶ 16.) Yet, when Lansing Pharmacy received interest in purchasing or subletting the equipment, Plaintiff allegedly refused to authorize any such transaction. Instead, Plaintiff purportedly shared the information provided by Lansing Pharmacy regarding potential sublessees with Parata Systems, which in turn allegedly used this information in an effort to sell new equipment and products directly to these potential customers. These actions, in Defendants' view, violated Plaintiff's duty under Michigan's enactment of the Uniform Commercial Code ("UCC") to pursue its contractual remedies in good faith, *see* Mich. Comp. Laws § 440.9601 cmt. 5, as well as Plaintiff's more general obligation under Michigan law to mitigate its damages, *see, e.g., Morris v. Clawson Tank Co.,* 459 Mich. 256, 587 N.W.2d 253, 257 (1998).

As Plaintiff correctly observes, however, Defendants have failed to provide the requisite evidentiary foundation for this claim of bad faith conduct. Defendants' account of Lansing Pharmacy's alleged efforts to sell or sublet the equipment covered by the finance agreements rests exclusively on the affidavit of Lansing Pharmacy's chairman and chief executive officer, Defendant Robert Winters, along with a handful of e-mails included as exhibits to this affidavit.[4] Yet, as thoroughly detailed in Plaintiff's reply brief

---

[4]More generally, the Court observes that both sides in this case have relied almost entirely on affidavits to support the arguments advanced in their summary judgment briefs. So far as the record discloses, no depositions were taken in the course of discovery.

in further support of its summary judgment motion, (*see* Plaintiff's Reply Br. at 2-3), many of the statements in Mr. Winters' affidavit may not be considered in resolving Plaintiff's motion, as they are either (i) made without any indication that Mr. Winters has personal knowledge of the matters he is addressing, or (ii) inadmissible hearsay (or double hearsay) that recounts what Mr. Winters was told by others. *See* Fed. R. Civ. P. 56(c)(4) (mandating that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence"); *see also Sperle v. Michigan Department of Corrections,* 297 F.3d 483, 495 (6th Cir. 2002) (emphasizing that "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact").

    Examples of these evidentiary deficiencies are found throughout Mr. Winters' affidavit. As he recounts, for instance, his effort to sell one of the two pharmaceutical dispensing systems to another pharmacy, Dandurand Drugs, he states that the owner of this pharmacy, Mike Dandurand, "told me that he was later contacted by [Plaintiff] regarding the potential purchase of another new machine but he chose to go with another company." (Winters Decl. at ¶ 21.) Later in his affidavit, Mr. Winters references an attempt to reassign the lease for one of the pharmaceutical dispensing systems to Jason Hulvey and Don Bedell of Bedell Group LTC. (*Id.* at ¶¶ 24-25.) Mr. Winters states that he was told (presumably by a representative of the Plaintiff corporation) that this lease "could not be assumed without express permission and that I needed to provide the

9

contact information for Mr. Hulvey," but that "after Mr. Hulvey was contacted by [Plaintiff], he backed out of the deal because he was told that we could not sublease the machine." (*Id.* at ¶¶ 26-27.) He further states that Mr. Bedell "indicated that he was being pressured to purchase a new machine[] directly from Parata Systems." (*Id.* at ¶ 30.)

These various statements by Mr. Winters regarding what others told him about their dealings with Plaintiff or Parata Systems rest on inadmissible hearsay, *see* Fed. R. Evid. 801(c), and thus cannot be relied upon by Defendants to give rise to a genuine issue of fact that would defeat Plaintiff's entitlement to summary judgment.[5] Moreover, certain statements in Mr. Winters' affidavit appear to lie outside his personal knowledge, (*see, e.g.,* Winters Decl. at ¶ 36 (asserting that Plaintiff acted "in concert with Parata Systems" to "s[ell] new machines to potential buyers" of the equipment leased by Lansing Pharmacy)), while other statements relay Mr. Winters' opinions, (*see, e.g., id.* at ¶ 35

---

[5]In an apparent effort to alleviate this hearsay concern, Mr. Winters supports some of his assertions by pointing to e-mails he exchanged with the other individuals mentioned in his affidavit. (*See, e.g.,* Winters Decl., Ex. C (e-mails exchanged between Winters and Bedell).) These exhibits only compound the problem, however, because the e-mails are merely additional examples of out-of-court statements offered by Defendants to prove the truth of the matters asserted in them. Defendants have not suggested any hearsay exception that might apply to the e-mails received by Mr. Winters from non-parties such as Mr. Bedell, nor have these other individuals been asked to authenticate their communications or confirm that they have personal knowledge of the matters addressed in these e-mails. *See Alexander v. CareSource,* 576 F.3d 551, 561 (6th Cir. 2009) (affirming the district court's refusal to consider various documents, including an e-mail, that accompanied the plaintiff's response to a summary judgment motion because these materials "were not authenticated or otherwise were inadmissible in evidence"). Moreover, Defendants have not attempted to make a showing under Fed. R. Civ. P. 56(d) that might explain their failure to "present facts essential to justify [their] opposition" to Plaintiff's motion, such that the Court could grant them additional "time to obtain affidavits or declarations or to take discovery" that could lend support to Mr. Winters' statements in his affidavit.

(opining that it is "clear based on [Plaintiff's] conduct that they unreasonably refused to allow Lansing Pharmacy to sublease the machines"), which must be disregarded in resolving Plaintiff's motion, *see State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir. 1979). Stripped of all these assertions that fail to comport with the standards of Rule 56, Mr. Winters' affidavit lends no evidentiary support to Defendants' otherwise bare contentions that Plaintiff acted in bad faith and failed to mitigate its damages.

      To the contrary, the unchallenged record put forward by Plaintiff in support of its motion squarely defeats these contentions. In particular, an official of the Plaintiff corporation, Thomas J. Amell, has stated without contradiction that while there were inquiries from third parties about the possible purchase or sublease of the equipment covered by the finance agreements, none of these inquiries "included any definite terms or was expressed beyond a mild or modest interest," and Plaintiff "received no written proposals or offers to purchase [this equipment] from any source." (Amell 4/30/2012 Aff. at ¶¶ 10-11.) Mr. Amell has further stated that any such third parties that expressed any interest in assuming Lansing Pharmacy's rights and obligations under the equipment finance agreements were "told to supply [Plaintiff] with financial and credit information to determine their qualifications and creditworthiness," but that Plaintiff "received no financial or credit information from any potential purchaser." (*Id.* at ¶¶ 14-15.) Finally, Mr. Amell states that Plaintiff "has not offered nor entered into financing arrangements with any party originating from or referred by Lansing Pharmacy, L.C., Robert L. Winters

11

or any of the Defendants to purchase the [systems] that are the subject matter of this case," (Amell 6/7/2012 Decl. at ¶ 3), and a representative of Parata Systems, Anton Janssen, likewise states that "Parata Systems has not sold any item of equipment to any party originating from or referred by Lansing Pharmacy, L.C., Robert L. Winters or any of the Defendants," (Plaintiff's Reply, Janssen Decl. at 3).

Against this evidentiary backdrop, Defendants have failed as a matter of law to identify a genuine issue of fact as to their claims that Plaintiff acted in bad faith or failed to mitigate its damages. The most that can be said under this record is that Lansing Pharmacy identified and advised Plaintiff of third parties that might be interested in assuming its obligations under the financing agreements or purchasing or subletting the equipment covered by these agreements, but that Plaintiff ultimately declined to give its assent to any of these proposed arrangements. Defendants have failed to identify any case law or other authority suggesting that Plaintiff's conduct under these circumstances could be characterized as lacking in good faith or evidencing a failure to mitigate its damages.[6]

Indeed, the Court harbors considerable doubt whether the contentions advanced by Defendants here, even if supported by evidence, would give rise to questions of fact as to

---

[6]In fact, Defendants' response to Plaintiff's motion is wholly bereft of citation to any authority on these subjects, apart from boilerplate references to UCC provisions and Michigan cases that establish no more than the generalized duties to act in good faith and to mitigate damages. It is not the obligation of this Court to uncover case law on Defendants' behalf that might flesh out the nature and extent of these duties, and thereby support a finding of bad faith or failure to mitigate under the facts and circumstances presented here.

Plaintiff's bad faith conduct or failure to mitigate its damages. The equipment finance agreements executed by Lansing Pharmacy conferred "no right to sell, transfer, assign or sublease the equipment or this Agreement," and dictated that Lansing Pharmacy was to "make all payments under this Agreement regardless of any claim or complaint" against the equipment supplier, Parata Systems. (Equipment Finance Agreements at 2.) These agreements also granted Plaintiff a number of remedies in the event of Lansing Pharmacy's (acknowledged) failure to make the required payments, including taking possession of and selling or re-leasing the equipment and accelerating Lansing Pharmacy's remaining payments. (*See id.*) Nothing in these agreements — nor in any law or authority identified by Defendants — imposed upon Plaintiff any duty to pursue any other arrangements or remedies that Lansing Pharmacy might have preferred, or to relieve Lansing Pharmacy of its contractually agreed-to prohibitions against reassigning the agreement or selling or subletting the equipment. Instead, Plaintiff was entitled to the benefit of the bargain it struck with Lansing Pharmacy, including the exercise of the remedies set forth in the agreements once Lansing Pharmacy defaulted on its payment obligations.[7]

---

[7]To the extent Defendants might suggest that the parties' discussions following Lansing Pharmacy's default operated to somehow waive the agreements' restrictions on selling the equipment or reassigning the leases, or to otherwise modify or limit the remedies available to Plaintiff under the agreements, any such argument would be foreclosed by the provision in the agreements that required any amendments to be in writing. *See Quality Products & Concepts Co. v. Nagel Precision, Inc.,* 469 Mich. 362, 666 N.W.2d 251, 258 (2003) (holding that a modification of a contract with a provision requiring that any amendments be in writing may be established only through "clear and convincing evidence" that "the parties mutually intended to modify the *particular* original contract, including its restrictive amendment clauses such as

To be sure, the UCC provision and accompanying commentary cited by Defendants required Plaintiff to act in good faith as it exercised these remedies, and the Michigan courts likewise have imposed upon creditors such as Plaintiff the obligation to exercise their remedies in a way that minimizes their damages. Yet, the arguments put forward by Defendants in opposition to Plaintiff's motion do not rest upon the proposition that Plaintiff failed to act in good faith or to mitigate its damages as it exercised its remedies under the equipment finance agreements. Rather, Defendants contend, in effect, that Plaintiff acted in bad faith by purportedly refusing to *explore other options* that would *substitute* for the remedies provided in the parties' contract. Defendants have not identified — and neither is the Court aware of — any authority that would require a contracting party to forgo its bargained-for remedies in the event of the other party's default, and to instead pursue other arrangements that the defaulting party might find more preferable. While it might perhaps make business sense for the parties to consider and discuss such alternative arrangements, a party that entertains such discussions does not thereby surrender its right to proceed in accordance with the contract if these discussions do not result in a mutual agreement upon new terms to govern the parties' relationship. Such a rule would discourage cooperative negotiations among contracting parties in the event of a default, and would instead lead to rigid contract enforcement of the very sort Defendants sought to avoid here.

---

written modification or anti-waiver clauses").

For all of these reasons, then, the Court finds no basis in law or the record for the defenses to liability advanced in Defendants' response to Plaintiff's motion. It follows that Plaintiff is entitled to summary judgment in its favor on the breach of contract and breach of guaranty claims asserted in its complaint.

**C.    Defendants Will Be Given a Final Opportunity, Through Their Current or Substitute Counsel, To Challenge the Award of Damages and Attorney Fees Sought in Plaintiff's Motion and Supporting Affidavits.**

In addition to seeking an award of summary judgment in its favor as to Defendants' liability, Plaintiff also contends that damages awardable under the equipment finance agreements and accompanying guaranties may be determined under the existing record as a matter of law, so that the Court should proceed to enter a judgment in this amount. In response, Defendants note that at the time their response brief was filed, Plaintiff had taken possession of the equipment covered by the finance agreements but had not yet sold this equipment. Because Plaintiff was obligated to proceed in a "commercially reasonable" manner in selling this equipment, *see* Mich. Comp. Laws § 440.9610(2), Defendants argue that no judgment may be entered until they are given an opportunity to raise any desired challenges to Plaintiff's disposition of the equipment.

After the parties completed their briefing on Plaintiff's motion, Plaintiff filed supplemental affidavits advising the Court of the sale of the two pharmaceutical dispensing systems covered by the equipment finance agreements. Defendants have not lodged any objections to the commercial reasonableness of these sales, just as they have not contested any aspect of the damage figures put forward by Plaintiff in its summary

15

judgment briefing and accompanying affidavits. Arguably, then, a judgment could be entered on the basis of Plaintiff's unchallenged statements of the amounts owed by Defendants under the finance agreements and associated guaranties, as reduced by the amounts obtained by Plaintiff through the sales of the equipment covered by the finance agreements.

The Court is reluctant to enter such a judgment, however, in light of the developments in this case after the parties concluded their briefing on Plaintiff's summary judgment motion. Specifically, by motion filed on July 12, 2012, defense counsel has moved to withdraw from any further representation of Defendants, citing their "substantial fail[ure] to satisfy their financial obligations" to counsel. (Defense Counsel's Motion to Withdraw, Br. in Support at 2.) This motion poses a dilemma to the final resolution of Plaintiff's claims in this suit because, other than individual Defendant Robert Winters, the remaining Defendants "may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 202, 113 S. Ct. 716, 721 (1993); *see also WB Music Corp. v. Port City Cruise Line, Inc.,* No. 1:09-742, 2009 WL 3066663, at *1 & nn. 1, 2 (W.D. Mich. Sept. 22, 2009) (collecting cases applying this rule, and confirming that it applies both to corporations and to limited liability companies). Thus, while Defendants' failure to pay their counsel provides a basis for withdrawal, counsel's request for withdrawal may nonetheless be denied "if it would work severe prejudice on the client." *Brandon v. Blech,* 560 F.3d 536, 538 (6th Cir. 2009).

In recognition of these competing concerns, the Court has held counsel's motion in abeyance, and has entered a September 7, 2012 order instructing Defendants to secure substitute counsel within thirty (30) days of the entry of this order. This thirty-day period has now passed without substitute counsel entering an appearance on Defendants' behalf. Nonetheless, in an abundance of caution, the Court will grant Defendants one additional opportunity to either re-establish their relationship with existing counsel or obtain substitute counsel, so that Defendants may lodge any desired objections to the amounts claimed by Plaintiff as properly awardable in this case. If Defendants fail to pursue this opportunity, the Court will enter judgment against them in accordance with Plaintiff's submissions, and defense counsel's pending motion to withdraw will be granted.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's April 30, 2012 motion for summary judgment (docket #20) is GRANTED IN PART, to the extent that it seeks a determination as to Defendants' liability, and is otherwise HELD IN ABEYANCE pending the parties' further submissions on the issue of damages. IT IS FURTHER ORDERED that, within *fourteen (14) days* of the date of this opinion and order, Plaintiff shall file with the Court and serve upon Defendants a statement, with supporting affidavits, of the damages and fees to which Plaintiff claims to be entitled, along with a proposed judgment reflecting these claimed awards of damages and fees.

Next, IT IS FURTHER ORDERED that, within *fourteen (14) days* of service of Plaintiff's statement and proposed judgment, Defendants shall file and serve any desired objections or challenges to the damage and fee awards sought by Plaintiff. Apart from Defendant Robert Winters, the remaining Defendants must file and serve any such objections through either existing or substitute counsel. The Court will then rule upon any objections and enter an appropriate judgment. In the event that no objections are timely filed within the 14-day period for doing so, the Court will enter Plaintiff's proposed judgment as unopposed.

Dated: February 8, 2013         s/Gerald E. Rosen
                                Chief Judge, United States District Court

**11-14795 Americorp Financial, LLC v. Lansing Pharmacy, LC, et al
Opinion and Order Granting Plaintiff's Motion for Summary Judgment**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 8, 2013, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager